UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Oxbow Solar Professionals, Inc. d/b/a Oxbow Sunworks, | File No. 20-cv-567 (ECT/DTS) |
|     Plaintiff and Counterclaim-Defendant, | |
| and | |
| Morgan Charles Thomas Southard, | **OPINION AND ORDER** |
|     Counterclaim-Defendant, | |
| v. | |
| Borrego Solar Systems, Inc., | |
|     Defendant and Counterclaim-Plaintiff. | |

---

Steven R. Little, SRL Law, PLLC, St. Paul, MN, for Plaintiff and Counterclaim-Defendant Oxbow Solar Professionals, Inc., and Counterclaim-Defendant Morgan Charles Thomas Southard.

Curtis D. Smith, Aaron A. Dean, Sarah E. Doerr, and Jeffrey A. Wieland, Moss & Barnett; Richard E. Elder, Laura Lee Gildengorin, Lubin Olson & Niewiadomski LLP, San Francisco, CA, for Defendant and Counterclaim-Plaintiff Borrego Solar Systems, Inc.

---

In these consolidated cases, Plaintiff and Counterclaim-Defendant Oxbow Solar Professionals, Inc. has withheld relevant discovery; ignored orders to provide that discovery and to pay related attorneys' fees; declined to appear for hearings or respond to motions; and participated only sporadically in the litigation. Its opponent, Defendant and Counterclaim-Plaintiff Borrego Solar Systems, Inc., has moved to dismiss Oxbow's claims

as a sanction for its behavior. Borrego's motion will be granted. Oxbow has exhibited the same behavior here that led to the dismissal of its claims in a recent, similar case, *EDF Renewables Distributed Solutions Inc. v. Southard*, No. 19-cv-1588 (ECT/BRT), 2020 WL 5913520 (D. Minn. Oct. 6, 2020). That conduct has prejudiced Borrego, and no lesser sanction is sufficient.

I

*Procedural history.* These consolidated cases arise out of the construction of ten photovoltaic solar-power projects in Minnesota. *See, e.g.*, Compl. ¶ 14, No. 19-cv-2338 (D. Minn.), ECF No. 1. Borrego was the prime contractor on each project, and, in 2018, it subcontracted with Oxbow to construct portions of the projects. *Id.* ¶ 10; Am. Answer & Countercl. ¶ 8, No. 19-cv-2338 (D. Minn.), ECF No. 14. Borrego terminated Oxbow from the projects in early 2019. *E.g.*, Compl. ¶¶ 10, 41–42, No. 19-cv-2338; Am. Answer & Countercl. ¶¶ 8, 25, No. 19-cv-2338, ECF No. 14.

Oxbow's termination from the projects led to a series of lawsuits in state and federal court. In June 2019, Oxbow brought four different actions in Minnesota state court against Borrego and various other defendants. *See* Compl., No. 20-cv-567, ECF No. 1-1; Notice of Removal ¶ 1, No. 20-cv-1059, ECF No. 1; Compl., No. 20-cv-1104, ECF No. 1-1; Compl., No. 20-cv-1109, ECF No. 1-1. In each action, Oxbow raised legal and equitable claims relating to its termination from one of the solar projects and sought to foreclose mechanic's liens against the real property on which the relevant project was located. Compl. ¶¶ 23–52, No. 20-cv-567; Am. Compl. ¶¶ 17–53, No. 20-cv-1059, ECF No. 1-1; Compl. ¶¶ 17–47, No. 20-cv-1104; Compl. ¶¶ 23–52, No. 20-cv-1109. Borrego posted a

bond in each case that would serve as substitute security for the mechanic's liens. *See* No. 20-cv-567, ECF No. 1-2 at 1–5; No. 20-cv-1059, ECF No. 1-3 at 2–5; No. 20-cv-1104, ECF No. 1-3 at 2–12; No. 20-cv-1109, ECF No. 1-2 at 1–12.

Meanwhile, in August 2019, Borrego sued Oxbow and Morgan Southard—Oxbow's controlling shareholder—in federal court, asserting a variety of contract and tort claims related to all ten projects. *See* Compl., No. 19-cv-2338. Oxbow and Southard filed a joint answer on September 19, 2019, denying that Borrego was entitled to any relief. No. 19-cv-2338, ECF No. 12. A few weeks later, Oxbow filed an Amended Answer and Counterclaim, asserting claims against Borrego for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit. Am. Answer & Countercl., No. 19-cv-2338.

Next, between February and May of 2020, Borrego removed all four of Oxbow's state-court actions to federal court.[1] Once the cases were in federal court, Borrego filed answers and asserted counterclaims against Oxbow and Southard that essentially mirror the claims it had already raised in its original federal lawsuit. *See* No. 20-cv-567, ECF No. 2; No. 20-cv-1104, ECF No. 2; No. 20-cv-1109, ECF No. 4.[2] The Parties then filed a

---

[1] Oxbow named numerous other defendants in the state-court actions, some of which are still listed on the federal docket. According to the notices of removal, Borrego is now the sole remaining defendant in each of the consolidated cases. *See* Notice of Removal ¶ 10, No. 20-cv-567, ECF No. 1; Notice of Removal ¶ 10, No. 20-cv-1059, ECF No. 1; Notice of Removal ¶ 10, No. 20-cv-1104, ECF No. 1; Notice of Removal ¶ 11, No. 20-cv-1109, ECF No. 1.

[2] The docket does not show that Borrego filed an answer in No. 20-cv-1059.

3

stipulation to consolidate all five pending actions. No. 20-cv-567, ECF No. 19. The cases were consolidated on September 29, 2020. ECF No. 23.[3] No. 20-cv-567 was designated the lead case, and the other cases were administratively closed. *See id.*

*Discovery Dispute.* While this procedural history was unfolding, Borrego initiated discovery. It served Oxbow with its first set of document-production requests on November 11, 2019. Second Elder Decl. ¶ 2, Ex. A [ECF Nos. 44, 44-1]. Oxbow responded on April 13, 2020, by producing approximately 240 records spanning 784 pages. *Id.* ¶ 3.[4]

In early May 2020, Borrego's counsel sent Oxbow's counsel—Steven R. Little—a letter identifying deficiencies in Oxbow's response and seeking a supplemental production. *See* First Elder Decl. ¶ 6, Ex. C [ECF No. 27]. Mr. Little responded with an email asking Borrego's counsel to call him to discuss the alleged deficiencies, but despite multiple attempts, Borrego's counsel was unable to reach Mr. Little by phone. Smith Decl. ¶ 3, Ex. B [ECF No. 28]. Borrego reached out to Mr. Little again on June 22, 2020, informing him that it would be producing its own documents soon and asking when it could expect Oxbow's supplemental production. *Id.* ¶ 4, Ex. C. In a phone call on July 8, Mr. Little told Borrego's counsel that he had been delayed in responding for personal reasons, but

---

[3] From here onward, docket citations will refer to the docket in No. 20-cv-567.

[4] On June 26, 2020, Borrego produced 19,071 records spanning 62,990 pages. *Id.* ¶ 4. The record does not indicate whether Borrego produced these documents in response to a specific request by Oxbow, but Borrego states in its brief that "Oxbow has not propounded any discovery or noticed any depositions in this action." Def.'s Mem. in Supp. at 9 [ECF No. 42].

4

that "he had a large number of [responsive] documents in his possession" and "intended to provide [counsel] with a link to access those documents." *Id.* ¶ 5; First Elder Decl. ¶ 9. When no link came, Borrego's counsel sent Mr. Little another email on July 16, threatening to bring a motion to compel if it did not receive the documents by noon the next day. Smith Decl. ¶ 6, Ex. D. Mr. Little responded that he was "working on it today." *Id.* Borrego received nothing.

This series of events led Borrego to file a motion to compel on October 8, 2020. ECF No. 24. Oxbow did not file a response to the motion or appear at the hearing on the motion. *See* ECF No. 31. On October 20, Magistrate Judge David T. Schultz granted the motion and ordered Oxbow to "produce all requested documents on or before 5:00 PM CDT on Monday, October 26, 2020." *Id.* As a sanction, Magistrate Judge Schultz ordered Oxbow to "pay all reasonable attorney's fees and expenses incurred by Borrego in conjunction with its attempts to secure production of the documents by Oxbow." *Id.* After reviewing fee statements submitted by Borrego, Magistrate Judge Schultz issued a supplemental order on November 10, directing Oxbow to pay a total of $22,453 in fees within 30 days. ECF No. 32.

Oxbow did not meet the October 26 deadline to produce all responsive documents. Eventually, however, it provided two additional sets of documents. The first, on November 2, "contained no new e-mails" and was "duplicative of Oxbow's [original] production." Second Elder Decl. ¶ 11. The second, on November 19, included "ten new responsive e-mails" but was otherwise "duplicative of Oxbow's prior productions." *Id.* In all, Oxbow has produced "fewer than twenty-five responsive e-mail threads in this action, with no

attachments." *Id.* It has produced "no text messages," *id.*, and it has not paid Borrego's attorneys' fees.

Deposition testimony by two Oxbow representatives—Southard and Brett Peterson—suggests that additional responsive documents exist. Peterson, a former Oxbow project manager, testified that he had helped Southard and another Oxbow employee gather "[p]robably 50" emails related to the projects. Second Elder Decl., Ex. E ("Peterson Dep.") at 128:12–129:5 [ECF No. 44-5]. He also gave Mr. Little a thumb drive containing "[e]mail communication[s], change orders, delay ledgers, probably some cost analysis of how winter conditions affected Oxbow's ability to perform, [and] a variation of drawing sets." *Id.* at 130:15–131:6.[5] And he testified that Oxbow used a document management system called Procore to manage its projects with Borrego, but that he had not pulled any documents from Procore for production. *Id.* at 132:20–133:13. Southard, in his deposition, testified that there were "thousands or a thousand-plus" emails related to the Borrego projects. Second Elder Decl., Ex. F ("Southard Dep.") at 22:8–16 [ECF No. 44-6]. Oxbow had maintained at least seven employee e-mail accounts that would have contained relevant information, but it appears that it only took steps to gather documents from three of the accounts. *See id.* at 15:20–16:13, 19:22–20:1, 23:15–26:6. As for Procore, Southard's testimony seems to conflict slightly with Peterson's. Southard testified that "any and all [relevant] information had been extracted from Procore" and that "the vast majority of what ha[d] been produced based on [Borrego's] discovery requests ha[d] come by way of

---

[5] Borrego does not make clear whether it received any of the referenced information on the thumb drive.

6

Procore." *Id.* at 39:22–40:13. Either way, by the time Mr. Little took over representing Oxbow in the spring of 2020, the Procore account had terminated. *Id.* at 40:14–20. Similarly, Oxbow had used a program called QuickBooks Online to store its accounting records, but that account was now inactive, too. *Id.* at 44:18–45:15. Finally, Southard confirmed that Oxbow employees communicated about the Borrego projects by text message. *Id.* at 47:8–17. According to Borrego, "Oxbow's productions did not include the numerous records stored in Procore and QuickBooks, including daily logs, progress photos, and accounting records, described in Southard's testimony," nor did they include any text messages. Def.'s Mem. in Supp. at 11.

Since November 2020, Oxbow's participation in this litigation has been only sporadic. Mr. Little appeared, along with Peterson and Southard, at the depositions on December 9, 2020, and January 20, 2021. *See* Peterson Dep. at 5:20–22; Southard Dep. at 4:21–22. The Parties submitted two joint stipulations to amend the pretrial scheduling order in December. *See* ECF Nos. 33, 36. And on April 14, 2021, both Parties appeared for a settlement conference with Magistrate Judge Schultz. ECF No. 47. (No settlement was reached.) On the other hand, Oxbow has not provided additional responsive documents or paid the fees that Magistrate Judge Schultz ordered it to pay.

On March 31, 2021, Borrego filed the present motion to dismiss Oxbow's counterclaims and consolidated affirmative claims—referred to collectively as "Oxbow's

claims"—with prejudice as a sanction for Oxbow's conduct. ECF No. 40. Oxbow did not file a response or appear at the hearing on the motion. *See* ECF No. 52.[6]

II

Borrego invokes three different sources of law to support its motion to dismiss. The first is Federal Rule of Civil Procedure 37(b)(2)(A)(v), which authorizes a district court to dismiss an action "in whole or in part" if a party "fails to obey an order to provide or permit discovery[.]" The Eighth Circuit has described dismissal as a "drastic" discovery sanction that is "available only if there is (1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999); *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (internal quotation marks and citation omitted). Before dismissing a case on this basis, a "court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith." *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014) (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)).

---

[6]    In a prior order, issued after Oxbow's deadline to respond to Borrego's motion had passed, Oxbow was directed to show cause at the hearing why the motion should not be granted, and Mr. Little was directed to show cause why he should not be sanctioned personally. ECF No. 50. Shortly after the hearing, Mr. Little filed a letter stating that he had "mis-calendared" the hearing and would be available to appear at another time. ECF No. 51. The letter—which only references the order to show cause—does not provide any explanation or excuse for Oxbow's failure to respond to Borrego's motion or suggest that Oxbow now intends to contest the merits of the motion. For that reason, it is appropriate to decide the motion now. The nature and extent of any personal sanctions against Mr. Little will be addressed at a hearing on June 9, 2021. ECF No. 53.

8

The second is Rule 41(b), which authorizes a court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order[.]" As with dismissals under Rule 37, the Eighth Circuit has described Rule 41(b) dismissals as "drastic and extremely harsh sanctions" that are "proper only when there has been a clear record of delay or contumacious conduct by the plaintiff." *Bergstrom*, 744 F.3d at 574–75 (cleaned up).

Third, Borrego invokes a court's "inherent power" to dismiss an action as a "sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *see* 9 Arthur R. Miller, *Federal Practice and Procedure* § 2370 n.16 (4th ed. Apr. 2021 Update). A court must exercise "restraint and discretion" when relying on inherent power. *Chambers*, 501 U.S. at 44. "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, [a] court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 50. In other words, "courts first should turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions. Then, as an alternative basis for support or in circumstances where specific rules are insufficient, . . . it may be appropriate to invoke their inherent authority." *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009).

III

Before analyzing Borrego's motion, it is worth noting that this case seems to be part of a trend. Specifically, it is nearly identical to *EDF Renewables Distributed Solutions, Inc. v. Southard*, No. 19-cv-1588 (ECT/BRT), 2020 WL 5913520 (D. Minn. Oct. 6, 2020), in which Oxbow and Southard—represented there too by Mr. Little—repeatedly put off

9

and ignored their discovery obligations, refused to respond to motions or appear at hearings, and disobeyed court orders. *See id.* at *1–3. In an order issued two days before Borrego filed its motion to compel discovery in this case, Oxbow's counterclaims in *EDF Renewables* were dismissed with prejudice as a sanction for its conduct. *See id.* at *5–6.

With that background in mind, it becomes clear that all three of the sources of law that Borrego invokes support granting its motion. Because the motion primarily grows out of a discovery dispute, however, it is appropriate to focus on Rule 37. *See Sentis Grp.*, 559 F.3d at 900.

First, there are two discovery-related orders relevant to this motion. Magistrate Judge Schultz unambiguously directed Oxbow to "produce all requested documents" by a certain date. ECF No. 31. That "brings th[e] case within the ambit of Rule 37(b)(2)." *EDF Renewables*, 2020 WL 5913520, at *3. Magistrate Judge Schultz also ordered Oxbow to pay $22,453 in attorneys' fees and costs by December 10, 2020. ECF No. 32.

Second, Oxbow has "willful[ly] violat[ed]" those orders. *Comstock*, 775 F.3d at 992. For a violation to be "willful," the offending party need only have "acted intentionally as opposed to accidentally or involuntarily." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000) (quoting *Rodgers v. Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998) (presenting willfulness as a lower standard than bad faith). Willfulness may be inferred when a party repeatedly fails to meet discovery deadlines without explanation, fails to appear for scheduled court hearings, or otherwise exhibits a "pattern of voluntary delay and disengagement[.]" *EDF Renewables*, 2020 WL 5913520, at *4; *see Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1208 (8th Cir. 1983); *Song v. Regents of Univ. of Minn.*, No.

11-cv-427 (ADM/TNL), 2012 WL 1438899, at *4–5 (D. Minn. Apr. 26, 2012). Oxbow missed the deadline to comply with the order compelling discovery, and it has not paid Borrego's attorneys' fees. The surrounding circumstances suggest that these were not mistakes. On at least one occasion, Mr. Little told Borrego's counsel that additional responsive documents would be forthcoming but then did not provide them. Smith Decl. ¶¶ 5–6. When Borrego finally filed a motion to compel, Oxbow did not file a response or appear at the hearing. Oxbow also did not respond to or appear at the hearing on the present motion. With the sole exception of Mr. Little's request to continue the hearing on the order to show cause, *see supra* n.6; ECF No. 51, Oxbow has never sought to extend the relevant deadlines or attempted to explain these failures. This is all the more concerning because Oxbow has continued to participate in the litigation in other ways. In November, shortly after missing the October 26 deadline to comply with the order compelling discovery, Oxbow provided two additional (albeit inadequate) document productions. *See* Second Elder Decl. ¶ 11. It joined two stipulations with Borrego in December. ECF Nos. 33, 36. And in April 2021, after Borrego had already filed its motion to dismiss, Mr. Little appeared on Oxbow's behalf at a settlement conference. ECF No. 47.[7] All of this shows that Oxbow was aware of the ongoing proceedings and that it could have complied with Magistrate Judge Schultz's orders. It just chose not to.

---

[7]  Public records appear to show that Mr. Little has filed at least five new, unrelated cases in Minnesota state court since Magistrate Judge Schultz granted Borrego's motion to compel. *See Swanson v. Peterson*, No. 62-CV-20-5506 (Minn. Dist. Ct.); *In re Custody of H.J.J.*, No. 19HA-FA-21-42 (Minn. Dist. Ct.); *In re Sowden*, No. 71-FA-21-112 (Minn. Dist. Ct.); *Frazier v. State Farm Mut. Auto. Ins. Co.*, No. 27-CV-21-2762 (Minn. Dist. Ct.);

11

Third, Borrego has shown prejudice. *See Comstock*, 775 F.3d at 992. When a party fails to comply with a discovery order, it is generally enough that the noncompliance "impairs an opponent's ability to determine the factual merits of [the] party's claim." *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003); *cf. Sentis Grp.*, 559 F.3d at 903 (suggesting that there would be no prejudice if "everything that might be produced ha[d] been produced"). Borrego has identified numerous categories of documents that Oxbow has failed to produce. These include internal emails between Oxbow employees, emails between Oxbow employees and other entities, email attachments, payment applications for the solar projects, requests for information related to the projects, drawings, purchase orders, daily logs, progress photos, financial records, records of payment to Oxbow's subcontractors, and more. Def.'s Mem. in Supp. at 22. All of this information undoubtedly bears on the extent of Oxbow's performance under the subcontracts—one of the central controversies in this litigation. Without it, Borrego cannot reasonably hope to assess the merits of either Oxbow's claims or its own. Moreover, because Oxbow has terminated its accounts with Procore and QuickBooks Online, much of the information stored on those accounts may no longer be available.[8]

---

*Shoberg Props., LLC v. City of Cambridge*, No. 30-CV-21-266 (Minn. Dist. Ct.), all available at https://pa.courts.state.mn.us/default.aspx (last visited June 2, 2021).

[8] Borrego does not argue that Oxbow's failure to preserve this digital information, in itself, warrants dismissal under Rule 37. To do so, it would have to show, among other things, that the information "cannot be restored or replaced through additional discovery" and that, in allowing the information to be destroyed, Oxbow "acted with the intent to deprive [Borrego] of the information's use in the litigation[.]" Fed. R. Civ. P. 37(e)(2); *see Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). As it stands now, the record does not support these conclusions. With respect to QuickBooks, at least, Southard testified that

All the prerequisites for dismissal are therefore present, but that leaves the question whether dismissal is the right sanction for these circumstances. The law does not require "the least onerous sanction available," *Chrysler Corp.*, 186 F.3d at 1022, but it does reserve dismissal for the most "dilatory and contumacious conduct," *Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000). Courts should "weigh [the] need to advance [a] burdened docket against the consequence of irrevocably extinguishing [a] litigant's claim[.]" *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997). "The futility of lesser sanctions is a further consideration in the district court's balancing calculation." *Good Stewardship Christian Ctr. v. Empire Bank*, 341 F.3d 794, 797 (8th Cir. 2003).

The less drastic sanctions contemplated in Rule 37 would be either futile or insufficient in this case. By refusing to comply with Magistrate Judge Schultz's order to pay Borrego's attorneys' fees, Oxbow has already shown that a substantial monetary sanction will have little effect. The inadequacies of its discovery responses are wide-ranging rather than isolated, so there does not appear to be a single fact that could be "taken as established" or any "designated matters in evidence" that Oxbow could be prohibited from introducing. Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii). And "staying further proceedings until the order is obeyed," *id.* 37(b)(2)(A)(iv), would effectively reward Oxbow's conduct

---

he let the account expire because it was too expensive to maintain, Southard Dep. at 45:8–15, and it is not clear whether the missing information could be obtained directly from Procore or QuickBooks. Nonetheless, it seems appropriate to consider Oxbow's failure to preserve this information in assessing the prejudice to Borrego and as part of the general pattern of irresponsibility on Oxbow's part.

and further prejudice Borrego, which has claims of its own that it would like to resolve. Perhaps most significant, however, is the elephant in the room: Oxbow engaged in substantially similar behavior in *EDF Renewables*—leading to the dismissal of its counterclaims with prejudice—just weeks before the events underlying this motion. *See* 2020 WL 5913520, at *3–6. That dismissal seems to have had no effect on Oxbow's actions in this case. Under these unusual circumstances, anything less than dismissal with prejudice would not adequately account for the brazen nature of Oxbow's conduct.

Rule 41 and a court's inherent power to sanction both further support dismissing Oxbow's claims. This case has all the markers of the "contumacious conduct" that the Eighth Circuit requires for a Rule 41(b) dismissal. *Bergstrom*, 744 F.3d at 574–75 (citation omitted). There has been "an ongoing pattern of delay, a persistent failure to prosecute, [and] a disobedience of court orders on the part of the plaintiff[.]" *DiMercurio v. Malcom*, 716 F.3d 1138, 1140 (8th Cir. 2013). According to Borrego, Oxbow has not propounded any discovery even though the cases have been pending for over a year. Def.'s Mem. in Supp. at 25. Because Oxbow has not responded to this motion, there is no reason to question Borrego's assertion. Oxbow has disregarded multiple court orders, failed to appear for two hearings, and participated only intermittently in the everyday business of litigation. But the unprofessional nature of its conduct goes further. Mr. Little has repeatedly failed to respond to Borrego's communications. Oxbow apparently allowed

valuable information to be destroyed when its Procore and QuickBooks accounts lapsed.[9] And the fact that all of this behavior aligns so closely with the behavior that led to dismissal in *EDF Renewables* is all the more concerning. As in that case, Oxbow's "sanctionable behavior stretches beyond a single discovery order, blurring the lines between discovery misconduct, a failure to obey other court orders, and a more general abuse of the judicial process." 2020 WL 5913520, at *5.

One more matter deserves comment. In its motion papers, Borrego requests that the bonds it deposited in each of the four cases originally filed in state court be released. *See* Def.'s Mem. in Supp. at 26. These bonds were meant to serve as security against which Oxbow could attempt to recover on its mechanic's liens. The record seems to show that the bonds remain with the state courts in which they were originally filed. Rather than interfere with the internal operations of those courts, it is sufficient for present purposes to observe that, because Oxbow's lien foreclosure claims will be dismissed with prejudice, the bonds will no longer serve any purpose. *See EDF Renewables*, 2020 WL 5913520, at *6 (releasing bonds under similar circumstances). In other words, there is no apparent reason why the bonds Borrego deposited in each of the four cases filed originally in state court should not be released. Borrego may return to seek a more definitive statement if the state courts require one.

---

[9] In March 2019, shortly before it was terminated from the solar projects, Oxbow sent Borrego a preservation letter, which suggests that it was aware of its own obligations to preserve discoverable material. *See* Second Elder Decl. ¶ 14, Ex. 7 [ECF No. 44-7].

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant and Counterclaim-Plaintiff Borrego Solar Systems, Inc.'s Motion to Dismiss [ECF No. 40] is **GRANTED**.

2. Plaintiff and Counterclaim-Defendant Oxbow Solar Professionals, Inc.'s claims, including all of the affirmative claims and counterclaims that it raised in Case No. 20-cv-567 and the consolidated cases, are **DISMISSED WITH PREJUDICE**.

Dated: June 2, 2021

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court